**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**

| | | |
|---|---|---|
| Ralph Lamones, Jr., individually and as a representative of the classes, | ) ) ) ) ) ) ) | Case No. |
| | ) | **CLASS ACTION** |
| Plaintiff, | ) | **COMPLAINT** |
| v. | ) ) | |
| Human Resource Profile, Inc. | ) | **Jury Demand** |
| | ) ) | |
| Defendant. | ) | |

Ralph Lamones, Jr. ("Plaintiff"), by and through his attorneys, on behalf of himself and the Classes set forth below, brings this Complaint against Human Resource Profile, Inc. ("Defendant" or "HR Profile").

## PRELIMINARY STATEMENT

1.      Recognizing that employers, lenders, and landlords use consumer reports to deny people jobs, credit, and housing, Congress has chosen to regulate the content of these reports through the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et. seq.*

2.      Defendant, a consumer reporting agency, has systematically and willfully violated the FCRA by unlawfully reporting adverse information, other than records of convictions of crimes, which antedates the report by more than seven years.

3.      Defendant's practice of disseminating protected information has harmed Plaintiff and the putative class members by, among other things, prejudicing their prospects of employment, damaging their reputations, and invading their privacy interests.

4.      Based on Defendant's pattern and practice of related violations, Plaintiff asserts FCRA claims on behalf of himself and the Classes. On behalf of himself and the Classes,

Plaintiff seeks statutory damages, punitive damages, attorneys' fees, litigation expenses, costs, and all available other appropriate relief.

## THE PARTIES

5.      Individual and representative Plaintiff Ralph Lamones, Jr. is a resident of Lakeland, Florida.

6.      Defendant is an Ohio corporation with its principal office in Cincinnati, Ohio.

7.      Defendant provides consumer reports for employment purposes.

8.      Among other things, Defendant provides background checks to employers who use these reports to make important decisions, such as whether to hire, terminate, or promote the consumers who are the subjects of the reports. The background checks Defendant provides are consumer reports, and Defendant is a consumer reporting agency.

## JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question.

10.      Venue is proper in this District because Defendant regularly conducts business in this District and a substantial portion of the acts or omissions at issue occurred in this District.

## STATUTORY BACKGROUND

11.      Enacted in 1970, the FCRA's passage was driven in part by three related concerns. First, consumer reports were playing a central role in people's lives at crucial moments, such as when they applied for a job or credit, and when they applied for housing. Second, the provision of consumer reports invaded consumers' privacy and confidentiality. Third, despite their importance, consumer reports were unregulated and often presented an inaccurate picture of the individual who was the subject of the report.

12.      Congress was particularly concerned about the use of criminal background reports in the employment context, and therefore defined the term "consumer reports" to include background reports procured for employment purposes. *See* 15 U.S.C. § 1681a(d)(1)(B).

13.      To ensure that consumer report information is used in a manner that is "fair and equitable to the consumer," and "with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information," Congress limited consumer reporting agencies' ability to lawfully report old, adverse information—*i.e.*, "obsolete information."

14.      Congress's goal in prohibiting the reporting of obsolete information was to ensure that the information contained in the report remained relevant and fair to the consumer. *See* 115 Cong. Rec. 2414-15 (1969) (statement of Sen. Proxmire). Reporting obsolete information could paint an inaccurate picture of an individual who has changed his or her ways. Congress believed that when enough time has passed after an event that reflects negatively on a consumer, it would be "unfair to burden a consumer for life" when the individual has rehabilitated his or her record. 115 Cong. Rec. 33,410 (1969) (statement of Sen. Proxmire).

15.      Specifically, 15 U.S.C § 1681c(a) prohibits consumer reporting agencies from reporting the following items of obsolete information:

> (2) Civil suits, civil judgments, and records of arrest that from date of entry, antedate the report by more than seven years or until the governing statute of limitations has expired, whichever is the longer period.
> . . . .
> (5) Any other adverse item of information, other than records of convictions of crimes which antedates the report by more than seven years.

16.      To ensure that the seven-year rule against reporting this information was effective, the FCRA also requires credit reporting agencies to adopt reasonable procedures to avoid reporting such obsolete information. Specifically, 15 U.S.C. § 1681e(a) provides: "Every consumer reporting agency shall maintain reasonable procedures designed to avoid violations of

section 1681c of this title . . .”

17.     Section 1681e(a) thus requires consumer reporting agencies to adopt and maintain procedural safeguards to prevent the reporting of obsolete information in violation of § 1681c(a). *See, e.g.*, FTC, *1990 Commentary on the Fair Credit Reporting Act*, App. to Pt. 600, cmt. 607-1.

<u>**ALLEGATIONS RELATING TO PLAINTIFF**</u>

18.     In May 2016, Plaintiff applied to work for Intelligrated Systems, LLC (“Intelligrated”).

19.     Plaintiff was interviewed over the phone and offered a job by Intelligrated to fill a position as a millwright at a distribution center in Dundee, Florida, contingent on the successful completion of a background check.

20.     On May 17, 2016, Plaintiff received a new-hire packet that purported to include an authorization to procure a consumer report.

21.     In connection with Plaintiff’s application, Intelligrated procured a consumer report on Plaintiff from a consumer reporting agency called HR Profile. HR Profile’s report on Plaintiff was completed on June 3, 2016.

22.     HR Profile’s report on Plaintiff unlawfully included adverse information about criminal charges which did not result in a conviction, even though the charges were dismissed more than seven years previously and it was apparent from the face of the report that these adverse items of information were not records of convictions of crimes.

23.     Page 2 of the report that was completed in June of 2016 lists charges for “Attempt Burglary” and “Resist/Obstruct Officer Without Violence” and describes the “Charge Type” as “Felony.” However, the report lists the disposition of the charges as “Dropped” and lists the date of disposition as April 15, 1996—more than 20 years ago. The items of information pertaining to

these old, dismissed charges were not records of convictions of crimes.

24.     Page 2 of the report lists a charge for felony "Aggravated Assault with Firearm." Page 2 states, however, that Plaintiff pleaded guilty to a lesser, misdemeanor offense and lists the disposition date as August 31, 1998. The felony charge for aggravated assault was amended to a misdemeanor charge, meaning that Plaintiff was never convicted of the felony charge. Thus, the information on the report pertaining to the old, dismissed felony charge for "Aggravated Assault with Firearm" was not a record of conviction of a crime.

25.     Page 3 of the report lists a misdemeanor charge for "Use or Possess Drug Paraphernalia" and lists the "Charge Type" as "Felony." This charge was brought in Florida in Polk County. The disposition for the paraphernalia charge was listed as "No Action." The date of disposition for the charge was listed as June 2, 2000. This disposition is not a criminal conviction and therefore this old charge listed on the report is not a record of conviction of a crime.

26.     Page 3 of the report lists felony charges for "Armed Robbery" and "Carrying Concealed Weapon." The disposition for both of these charges was "Nolle Prossed," and the disposition date was January 19, 2005. Neither of these charges resulted in a criminal conviction and therefore these old charges listed on the report are not records of convictions of crimes.

27.     After receiving and reviewing Plaintiff's HR Profile report, Intelligrated decided not to hire Plaintiff based on the information in the report.

28.     In a letter dated June 7, 2016, which is attached as Exhibit 1, Intelligrated informed Plaintiff that it would not be hiring him because of HR Profile's consumer report.

**HR PROFILE'S ILLEGAL BUSINESS PRACTICES & WILLFUL VIOLATIONS**

29.     Defendant sells criminal background checks to employers that run background checks on job applicants and employees. Defendant's background checks bear on a consumer's

"character, general reputation, personal characteristics, or mode of living" and are consumer reports under the FCRA. 15 U.S.C. § 1681a(d).

30.     Defendant is a consumer reporting agency because it "for monetary fees . . . regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer report to third parties." 15. U.S.C. § 1681a(f).

31.     As a consumer reporting agency, Defendant is required to comply with all provisions of the FCRA.

32.     Defendant systematically and willfully violates the FCRA by reporting adverse information, other than criminal convictions, that antedates the report by more than seven years and by failing to adopt and maintain reasonable procedures to ensure that this obsolete information does not make its way into the consumer reports it provides to its customers.

33.     As a result of Defendants' conduct, job applicants such as Plaintiff appear to be worse job candidates than they would be if Defendant only reported information it is allowed to report under the law. This greatly increases the risk that Plaintiff and members of the proposed classes will be denied job opportunities or will suffer other forms of adverse action due to the reporting of illegal adverse information in their background reports.

34.     Defendant's inclusion of illegal and protected information in its reports has caused Plaintiff and members of the proposed classes to suffer concrete injuries in the form of income loss, loss of benefits, delay in employment, and/or other adverse employment action.

35.     Defendant's inclusion of illegal and protected information in its reports also has caused Plaintiff and members of the proposed classes to experience emotional distress, and to be concerned about the prospect of additional incorrect and unreportable information continuing to

be disseminated about him.

36.    Defendant's dissemination of protected, obsolete information in its reports also damages Plaintiff's and proposed class members' reputations and invades their privacy.

37.    Defendant's failure to maintain reasonable procedures to avoid inclusion of obsolete information in its report directly resulted in the inclusion of obsolete information in Plaintiff and class members' reports, which in turn resulted in the above injuries.

38.    In the FCRA, 15 U.S.C. § 1681c(a), Congress bestowed upon Plaintiff and members of the proposed classes a substantive right not to have obsolete adverse information, such as old dismissed criminal charges, disclosed in their consumer reports. Defendant injured Plaintiff and the proposed class members by infringing on this substantive right.

39.    Defendant routinely reports old criminal charges that have been dismissed, dropped, or abandoned by the prosecution (e.g., charges with a disposition of "dismissed," "dropped," "nolle prossed," or "no action").

40.    Defendant routinely reports old felony and other criminal charges even when the charge was later amended and the accused was ultimately convicted only of a lesser offense.

41.    It is Defendant's standard pattern and practice to report, as it did for Plaintiff, dismissed, dropped, or abandoned charges, or other adverse items of information other than convictions of crimes, that antedate the report by seven years.

42.    Consumer reporting agencies are clearly permitted to report records of criminal "convictions" beyond seven years.  15 U.S.C. § 1681c.  But it is equally clear from the face of the same statutory provision that "arrests" and any "other adverse item of information" cannot be reported beyond seven years.  *See* 15 U.S.C. §§ 1681c(a)(2) and 1681c(a)(5). Defendant failed to comply with this clear statutory directive.

43.     Defendant's practice of reporting adverse items of information that are not criminal convictions, that antedate the report by more than seven years, violates a fundamental protection afforded to consumers under the FCRA, is contrary to the unambiguous language of the statute, and is counter to longstanding judicial and regulatory guidance.

44.     Defendant has both the practical capability and the legal obligation to remove outdated arrest records and criminal charges that are dismissed, dropped, abandoned, or otherwise do not result in a conviction.

45.     It is standard practice for consumer reporting agencies to write filters and algorithms to filter out obsolete credit information.

46.     Defendant, consistent with standard industry practices, could have written an algorithm or filter to ensure that all of its reports would exclude non-conviction criminal dispositions older than seven years. But Defendant failed to implement such an algorithm or filter.

47.     Defendant also could have ensured that the sources of information contained in its reports did not report obsolete information. Defendant failed to do so.

48.     It is also standard in the consumer reporting industry for consumer reporting agencies to have a purge date for information in their system that has become outdated. *See Gillespie v. Trans Union Corp.*, 482 F.3d 907, 908 (7th Cir. 2007).  By failing to utilize a purge date for outdated information, Defendant's practices and procedures fall far below industry standards and constitute recklessness.

49.     Defendant also failed to have Plaintiff and class members' reports properly reviewed by an individual who was trained in the FCRA, and specifically, in the requirements of

15 U.S.C. § 1681c(a).  Had Defendant had a properly trained individual review its reports, the problems would have been easily detected.

50.     Instead, however, Defendant places its business interests above the rights of consumers and unlawfully reports obsolete information for improper motives.

51.     Defendant reports obsolete information because it is cheaper for Defendant to produce reports containing information that is not lawfully reportable than it is for Defendant to weed this information out of reports prior to their being provided to Defendant's customers.

52.     Defendant also unlawfully reports such information because the practice of unlawfully reporting such information allows Defendant to produce voluminous reports, which creates the impression that the reports contain more information than competitors' reports when in fact, they report illegal information. Indeed, Defendants' website touts the fact that its reports contain more information than competitors' and even claims it can find more background information than an FBI criminal background check. According to its website, Defendant is "one of America's Best nationwide Employment Screening companies," because Defendant "find[s] 30-60% more information than any of [its] competitors." Defendant's website states that its background checks are "the most thorough . . . employment checks available."

53.     Defendant knows that its practice of selling background reports without sufficient procedures in place to ensure outdated information is weeded out violates the clear mandates of 15 U.S.C. § 1681c(a) and 15 U.S.C. § 1681e(a). Indeed, Defendant touts itself as a leader in FCRA compliance. Defendant frequently blogs on the FCRA, provides webinars related to FCRA compliance, and even claims to offer "the most . . . FCRA compliant employment checks available."

54.     Defendant's officers are well aware of the FCRA's requirements yet still fail to

ensure that they are followed. Defendant retains a full-time, dedicated compliance officer on staff that is well versed in the FCRA and FTC guidelines. Defendant's founder and president, Mark Owens, purports to be renowned for his FCRA expertise. Defendants' website also falsely claims that its background checks are "the most . . . FCRA compliant employment checks available." Clearly, Defendant is well aware of its obligations under the FCRA yet still fails to abide by them.

55.     Defendant's illegal practices also persist despite its membership in the National Association of Professional Background Services,[1] an organization that instructs its members not to report arrests and other adverse information that occurred more than seven years prior to the date of the consumer report.[2]

56.     Plaintiff's report further demonstrates Defendant's awareness of the seven-year rule because it labels the relevant portion of the background search as a "7 year felony and misdemeanor search."

57.     Defendant has been selling background checks since 1991. Defendant has had 25 years to achieve compliance with the FCRA, but has failed to do so.

58.     Defendant's practices violate a fundamental protection afforded to employees under the FCRA, are contrary to the unambiguous language of the FCRA, and are counter to longstanding judicial[3] and regulatory[4] guidance.

---

[1] *See* Helping You Find the Best CRA, https://www.hrprofile.com/documents/Articles/HRProfile-CRA-Checklist.pdf (last visited July 26, 2016).
[2] *See, e.g.,* Pamela Q. Devata, et. al., *Safe Screening, Safe Hiring*, HR Advisor, July/August 2009, at 12-18, made available for its clients by NAPBS at https://portal.napbs.com/files/public/Consumer_Education/Resources/HR%20Magazine%20Article%208-28-09.pdf (last visited Apr. 29, 2013).
[3] *See, e.g.*, *Avila v. NOW Health Grp., Inc.*, No. 14 C 1551, 2014 WL 3537825, at *3-*4 (N.D. Ill. July 17, 2014) (holding that the "express language of the FCRA" mandates that "a consumer reporting agency may not include any adverse item of information other than a 'record of conviction' not a 'record of dismissed charges'"); *Haley v. Talentwise, Inc.*, 9 F. Supp. 3d 1188, 1192 (W.D. Wash., April 2, 2014) (finding that under the "plain language" of the FCRA, a "dismissed charge from over seven years ago is both a 'record of arrest' and 'adverse' information that

## CLASS ACTION ALLEGATIONS

59. Plaintiff asserts his claim on behalf of a Class defined as follows:

> **Obsolete Information Class**: All individuals who were the subjects of background reports prepared by Defendant in the two years predating the filing of this Complaint, continuing through the date the class list is prepared, whose reports contain records of criminal arrest, charge, information, indictment, or other adverse items of information, other than records of criminal convictions, that antedate the report by more than seven years.

60. In addition, Plaintiff asserts his claim on behalf of the following subclass:

> **Charges Subclass**: All individuals who were the subjects of background reports prepared by Defendant in the two years predating the filing of this Complaint, continuing through the date the class list is prepared, whose reports contain information about dismissed, abandoned, or dropped charges, or charges that were amended to lesser offenses, that antedate the report by more than seven years.

61. <u>Ascertainability</u>: The Classes can be identified. Defendant maintains copies of consumer reports for at least two years after they are provided to end-users. The reports are maintained in text which can be electronically and/or manually searched to identify charges which pre-date the date of the report by more than seven years and corresponding dispositions.

---

[a consumer reporting agency] is prohibited from including in [a] consumer report") (citing *Serrano v. Sterling Testing Syst.*, 557 F. Supp. 2d 688, 693 (E.D. Pa. 2008)); *Dunford v. Am. DataBank, LLC*, No. C 13-03829 WHA, 2014 WL 3956774, at *14 (N.D. Cal. Aug. 12, 2014) ("In light of the remedial purpose of the Act, this order now holds that only the actual convictions may be reported and stale dismissed counts must be combed out and go unreported."); *King v. Gen. Info. Servs., Inc.*, 903 F.Supp.2d 303 (E.D. Pa. 2012) (FCRA's requirement excluding obsolete records of arrest comported with commercial speech doctrine); *Dowell v. Gen. Info. Servs., Inc.*, 13-CV-02581-L-BGS, Memorandum of the United States of America in Support of the Constitutionality of § 1681c of the Fair Credit Reporting Act, at 17 (S.D. Cal. Feb. 20, 2014) (stating that dismissed charges, even if associated with a conviction, may not be reported under the FCRA); *Serrano v. Sterling Testing Sys., Inc.*, 557 F. Supp. 2d 688 (E.D. Pa. 2008) (holding the FCRA prohibits even alluding to existence of unreportable adverse information).

[4] *See, e.g.*, FTC, *Forty Years of Experience with the Fair Credit Reporting Act, An FTC Staff Report with Summary of Interpretations*, July 2011, at 55, https://www.ftc.gov/sites/default/files/documents/reports/40-years-experience-fair-credit-reporting-act-ftc-staff-report-summary-interpretations/110720fcrareport.pdf (last visited July 26, 2016) ("Even if no specific adverse item is reported, a CRA may not furnish a consumer report referencing the existence of adverse information that predates the times set forth in this subsection."); *id.* at 65 (explaining that § 1681e(a) requires CRAs to adopt "procedural safeguards" to avoid the reporting of obsolete information in violation of 15 U.S.C. § 1681c(a)); FTC, *1990 Commentary on the Fair Credit Reporting Act*, Appendix to Part 600, cmts. 607-1A, -1B.

The reports can be searched to identify non-conviction dispositions using commonly used terms to describe them, such as "dismissed," "nolle prossed," "no action," or "dropped."  The search terms can be refined during the course of discovery as needed to ensure that any terms specific to Defendant's reporting practices are incorporated.

62.     Numerosity: The Classes are so numerous that joinder of all class members is impracticable.  Defendant has provided millions of background checks to more than 3000 clients. It regularly includes adverse information, other than criminal convictions, that predates the report by more than seven years.  Given the volume of Defendant's business, hundreds or thousands of consumers likely satisfy each class definition.

63.     Typicality:     Plaintiff's claims are typical of the members of the Classes. Defendant typically reports adverse information, other than criminal convictions, that antedates the report by more than seven years, and Defendant's procedures for reporting this obsolete information are standard as to all class members.  The FCRA violations suffered by Plaintiff are typical of those suffered by other class members, and Defendant treated Plaintiff consistent with other class members, in accordance with its standard policies and practices.

64.     Adequacy:     Plaintiff will fairly and adequately protect the interests of the Classes and has retained counsel experienced in complex class action litigation generally, and in FCRA litigation in particular.

65.     Commonality: Common questions of law and fact exist as to all members of the Classes, including but not limited to:

    a) Whether Defendant's practice of reporting charges that antedate the report by more than seven years that resulted in a disposition other than a conviction violates the FCRA;

    b) Whether Defendant's practices of reporting charges more than seven years old

that were later amended to a lesser offense violates the FCRA;

c) Whether Defendant failed to maintain reasonable procedures to avoid reporting adverse information, other than criminal convictions, that antedates the report by more than seven years;

d) Whether Defendant's violations were willful;

e) The proper measure of statutory damages; and

f) The proper measure of punitive damages.

66.     Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because the questions of law and fact common to the Classes predominate over any questions affecting only individual members of the Classes, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.  Defendant's conduct described in this Complaint stems from common policies and practices, resulting in common violations of the FCRA.  Class certification will also preclude the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendant's practices.   Moreover, management of this action as a class action will not present any likely difficulties.   In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all class members' claims in a single forum.

67.     Plaintiff intends to request notice to all members of the Classes to the extent required by Fed. R. Civ. P. 23.  The names and addresses of the class members are available from Defendant's records.

**COUNT I**
**Reporting Outdated Information**
**15 U.S.C. § 1681c(a)**
*On Behalf of Plaintiff and the Classes*

68.     Defendant violated the FCRA by including in Plaintiff's report adverse

information, other than criminal convictions, that antedated the report by more than seven years.
*See* 15 U.S.C. § 1681c(a).

69.     The foregoing violations were willful.  Defendant acted in knowing, deliberate, or reckless disregard of its obligations and the rights of Plaintiff and other class members.

70.     Defendant's willful conduct is reflected by, *inter alia*, the following:

   a) Defendant has been in the background-screening business for approximately 25 years and has had plenty of time to become compliant with the FCRA.

   b) Defendant specializes in furnishing consumer reports for employment purposes, has access to legal advice through its own compliance officer and outside counsel, and purports to be an expert on the FCRA. Yet there is no contemporaneous evidence that Defendant determined that its conduct was lawful.

   c) Defendant's conduct is inconsistent with the FTC's longstanding regulatory guidance, judicial interpretation, and the plain language of the statute.

   d) Defendant knows that it cannot report adverse information, other than criminal convictions, that antedates the report by more than seven years and for which the statute of limitations has run, yet it reports this information anyway.

   e) Defendant knew or had reason to know from its communications with the National Association of Professional Background Screeners that its conduct violates the FCRA.

   f) Defendant's similarly situated competitors have adopted policies of not reporting adverse information, other than criminal convictions, that antedates

the report by more than seven years and for which the statute of limitations has run.

g) Despite the pellucid statutory text and there being a depth of guidance, Defendant adopted a policy of systematically reporting adverse information, other than criminal convictions, that antedates the report by more than seven years and for which the statute of limitations has run.  By adopting such a policy, Defendant voluntarily ran a risk of violating the law that is substantially greater than the risk associated with a reading that was merely careless, and did so in order to avoid the costs of compliance and achieve an edge over its competitors.

h) Defendant includes a notation on its reporting indicating that the seven-year limitation on information is applicable, yet fails to exclude all adverse non-conviction information that antedates the report by more than seven years.

i) Defendant repeatedly committed the violations alleged herein, reporting antedated information about Plaintiff, and engaging in the same practice as to other members of the Classes.

71.    Plaintiff and the Classes are entitled to statutory damages of not less than $100 and not more than $1,000 for each and every one of these violations, pursuant to 15 U.S.C. § 1681n(a)(1)(A).

72.    Plaintiff and the Classes are also entitled to punitive damages and appropriate equitable relief for these violations, pursuant to 15 U.S.C. § 1681n(a)(2).

73.    Plaintiff and the Classes are further entitled to recover their costs and attorneys' fees, pursuant to 15 U.S.C. § 1681n(a)(3).

## COUNT II
### Failure to Adopt Reasonable Procedures
### 15 U.S.C. § 1681e(a)
*On Behalf of Plaintiff and the Classes*

74.     Defendant violated the FCRA by failing to maintain reasonable procedures to avoid violations of 15 U.S.C. § 1681c(a), in violation of 15 U.S.C. § 1681e(a).

75.     Defendant's failure to maintain reasonable procedures was the direct cause of injury to the class members because it resulted in the reporting of obsolete, adverse information.

76.     The foregoing violations were willful.  Defendant acted in knowing, deliberate, or reckless disregard of its obligation to maintain reasonable procedures.

77.     Defendant's willful conduct is reflected by, *inter alia*, the following:

j)   Defendant has been in the background-screening business for approximately 25 years and has had plenty of time to become compliant with the FCRA.

k)   Defendant specializes in furnishing consumer reports for employment purposes, has access to legal advice through its own compliance officer and outside counsel, and purports to be an expert on the FCRA. Yet there is no contemporaneous evidence that Defendant determined that its procedures were lawful.

l)   Defendant's conduct is inconsistent with the FTC's longstanding regulatory guidance, judicial interpretation, and the plain language of the statute.

m)  Defendant knows that it has an obligation to put in place and utilize procedural safeguards to prevent the reporting of adverse information, other than criminal convictions, that antedates the report by more than seven years, yet it knowingly failed to do so.

n)   Defendant's   similarly   situated   competitors   have   adopted   reasonable

16

procedures to avoid reporting adverse information, other than criminal convictions, that antedates the report by more than seven years. Yet Defendant has not done so.

o) Despite the pellucid statutory text and there being a depth of guidance, Defendant adopted a policy of systematically reporting adverse information, other than criminal convictions, that antedates the report by more than seven years.  By adopting such a policy, Defendant voluntarily ran a risk of violating the law that is substantially greater than the risk associated with a reading that was merely careless, and did so in order to avoid the costs of compliance and to achieve an edge over its competitors.

p) The extent of illegal information included in Plaintiff's report—which referenced no less than eight obsolete charges that never resulted in criminal convictions—indicates that Defendant did not have even a semblance of reasonable or adequate procedures in place to avoid the reporting of obsolete information, which constitutes, at the very least, recklessness.

78.    Plaintiff and the Classes are entitled to statutory damages of not less than $100 and not more than $1,000 for each and every one of these violations, pursuant to 15 U.S.C. § 1681n(a)(1)(A).

79.    Plaintiff and the Classes are also entitled to punitive damages and appropriate equitable relief for these violations, pursuant to 15 U.S.C. § 1681n(a)(2).

80.    Plaintiff and the Classes are further entitled to recover their costs and attorneys' fees, pursuant to 15 U.S.C. § 1681n(a)(3).

## **PRAYER FOR RELIEF**

81.     WHEREFORE, Plaintiff, on behalf of himself and the Classes, prays for relief as follows:

a)  determining that this action may proceed as a class action under Federal Rule of Civil Procedure 23;

b)  designating Plaintiff as representative for the Classes and designating Plaintiff's counsel as counsel for the Classes;

c)  issuing proper notice to the Classes at Defendant's expense;

d)  declaring that Defendant committed multiple, separate violations of the FCRA;

e)  declaring that Defendant acted willfully, in deliberate or reckless disregard of Plaintiff's rights and its obligations under the FCRA;

f)  awarding statutory and punitive damages as provided by the FCRA;

g)  awarding reasonable attorneys' fees and costs as provided by the FCRA; and

h)  granting further relief, in law or equity, as this Court may deem appropriate and just as provided by the FCRA.

## DEMAND FOR A JURY TRIAL

82.     Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff and the Classes demand a trial by jury.

Respectfully submitted,

Date:  August 19, 2016

/s/John Yanchunis
John Yanchunis
FL Bar No. 324681
MORGAN & MORGAN
COMPLEX LITIGATION GROUP
201 North Franklin Street, 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505
Fax: (813) 223-5402
jyanchunis@forthepeople.com

Anna P. Prakash
MN Bar No. 0351362*
Eleanor Frisch
MN Bar No. 0397776*
NICHOLS KASTER, PLLP
4600 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Telephone: 612-256-3200
Facsimile: 612-338-4878
aprakash@nka.com
efrisch@nka.com

* *pro hac vice* motions forthcoming

ATTORNEYS FOR PLAINTIFF